Damian D. Capozzola (SBN 186412)
THE LAW OFFICES OF DAMIAN D. CAPOZZOLA
633 W. Fifth Street, 26th Floor
Los Angeles, California 90071
Phone: (213) 533-4112
Facsimile: (213) 223-2014
ddc@ddclaw.com

Attorneys for Plaintiff
TOP GAMING NETWORK LTD.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| TOP GAMING NETWORK LTD., a Maltese Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DOUBLE COCONUT LLC, a California Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. BREACH OF CONTRACT**<br><br>**2. SPECIFIC PERFORMANCE**<br><br>**3. DECLARATORY RELIEF**<br><br>**4. CONVERSION**<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT

Plaintiff TOP GAMING NETWORK LTD. ("Plaintiff" or "TGN") alleges the following against Defendant DOUBLE COCONUT LLC ("Defendant" or "Double Coconut"):

## NATURE OF THE ACTION

1. This action arises from a material breach of a Work For Hire Master Services Agreement by Defendant, a software developer, who failed to deliver a functional video game per the agreed-upon milestones. Plaintiff, having paid Defendant for work that was never properly completed, seeks to recover its property, the "Work Product," including all source code and assets, and to be compensated for the damages it has suffered as a result of Defendant's failures.

## THE PARTIES

2. Plaintiff TOP GAMING NETWORK LTD. is a corporation organized and existing under the laws of Malta, with its principal place of business at Level 3A/4A 240 Msida Road, Gzira, Malta.

3. Plaintiff is informed and believes, and on that basis alleges, that Defendant DOUBLE COCONUT LLC is a limited liability company organized and existing under the laws of the State of California, with its principal place of business at 1583 33rd Ave., San Francisco, CA 94122. Plaintiff is further informed and believes that all members of Double Coconut LLC are citizens of the State of California.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because this is a civil action between a citizen of a foreign state and a citizen of the State of California, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendant because Defendant is domiciled in this District and its principal place of business is in this District.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

7. Additionally, venue is mandatory in this District pursuant to a forum selection clause in the parties' agreement, which states: "Each Party shall bring any suit, action or other proceeding with respect to the Agreement in a Federal District Court located in San Francisco County, San Francisco, CA."

## FACTS

**A. The Master Services Agreement (MSA)**

8. On or about October 1, 2024, Plaintiff and Defendant entered into a written contract titled "Work For Hire Master Services Agreement" (the "MSA"). A true and correct copy of the MSA is attached hereto as **Exhibit 1** and incorporated by reference.

9. Pursuant to the MSA and its "Exhibit A, Statement of Work #1" (the "SOW"), Defendant agreed to develop a front-end video slot game for Plaintiff titled "Cha Cha Bomb" (the "Game").

10. The MSA is a work for hire agreement. Under the Proprietary Rights section, the parties explicitly agreed that all Work Product, which includes all "technical information, computer or other specifications, documentation, works of authorship... ideas, knowledge, or data... originated by Contractor," would be the exclusive property of TGN.

11. The MSA states: "Company shall own all right, title and interest in and to the Work Product created hereunder . . . Contractor expressly acknowledges that the Parties have agreed that all aspects of the Work Product... are to be considered 'works made for hire' . . . and that Company is to be the 'author[.]'"

12. The SOW established a milestone-based development plan and payment schedule, which included an "Alpha" milestone and a "Beta" milestone.

13. TGN performed all, or substantially all, of its obligations under the MSA, including making timely payments to Defendant for the Kick-Off, Pre-

Production, Alpha, and Beta milestones, and providing Defendant with a fully working backend, API documentation, and continuous technical support and clarification.

### B. Defendant's Material Breach of the MSA

14. Beginning in or around late 2024 and continuing through July 2025, Defendant materially breached the MSA and SOW by, among other things:

   a. Failing to deliver a functional "Alpha" build that met the SOW requirements;

   b. Failing to deliver a "Beta" build that incorporated the "must-have" features essential to the Game's design, despite TGN having paid Defendant for the Beta milestone;

   c. Consistently delivering builds that were plagued with fundamental bugs and defects, such as "black screen" errors on mobile devices, rendering them unusable for testing or review;

   d. Failing to implement critical "must-have" features that were communicated to Defendant from the project's inception, including seamless user interaction, animation skip functions, and a consistent User Interface;

   e. Unilaterally and improperly attempting to re-scope the project and deem it in a "polish period" when, in fact, the core "Alpha" and "Beta" functionalities had not been delivered; and

   f. Failing to meet the agreed-upon project timelines, causing significant delays to TGN's business plans.

15. On information and belief, Defendant also breached the MSA by incorporating third-party copyrighted materials into the deliverables without authorization, exposing TGN to legal liability.

16. Although TGN paid Defendant's invoice for the "Beta" milestone, TGN did so in a good-faith effort to accelerate progress. TGN never formally

approved or accepted the Beta milestone, as the build delivered by Defendant was non-functional and incomplete.

### C. TGN Terminates the MSA and Demands Its Property

17. Based on Defendant's persistent and incurable material breaches, TGN, through its legal counsel, notified Defendant in writing on or about July 15, 2025, and again on July 24, 2025, that TGN considered the MSA terminated effective immediately.

18. The "Term and Termination" provision of the MSA provides that upon termination, Defendant: "must deliver to the Company, within 10 days of the termination, all Work Product, any work-in-progress and any other materials related to the development and performance of the Services if such Work Product and materials have been paid for."

19. TGN has paid for all Work Product created by Defendant through at least the Beta milestone.

20. On July 15, 2025, July 24, 2025, and again on August 4, 2025, TGN demanded that Defendant comply with its contractual obligation to deliver all Work Product that had been paid for, including all source code, build files, documentation, and art assets.

21. Defendant has failed and refused, and continues to fail and refuse, to deliver the Work Product to TGN.

22. Defendant is in wrongful possession of TGN's property, which TGN paid for and owns outright under the "work for hire" provisions of the MSA.

23. As a direct and proximate result of Defendant's breaches and wrongful withholding of the Work Product, TGN has been significantly damaged. It has been forced to scrap its development timeline, cannot use a different developer to finish the Game without the source code it already paid for, and has lost the entire benefit of its bargain, all while Defendant holds TGN's property hostage.

### FIRST CAUSE OF ACTION
### (Breach of Contract - Damages)

**(Against All Defendants)**

24. TGN re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 23, inclusive, as though fully set forth herein.

25. The MSA is a valid and enforceable contract between TGN and Defendant.

26. TGN performed all, or substantially all, of the conditions, covenants, and promises required on its part to be performed in accordance with the terms of the MSA, or its performance was excused by Defendant's breaches.

27. Defendant materially breached the terms of the MSA, including by failing to deliver functional and complete "Alpha" and "Beta" milestone builds, failing to adhere to the project's core requirements, and, following termination, failing to deliver the paid-for Work Product as required by the MSA's termination clause.

28. As a direct and proximate result of Defendant's breaches, TGN has sustained, and will continue to sustain, damages in an amount to be proven at trial. These damages include, but are not limited to, all payments made to Defendant for which TGN received no value, the cost of hiring a new developer to complete or re-create the Game (cost-to-cover), and lost profits from TGN's inability to launch the Game as scheduled.

## SECOND CAUSE OF ACTION

**(Specific Performance of Contractual Obligation – In the Alternative to Breach of Contract)**

**(Against All Defendants)**

29. TGN re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 23, inclusive, as though fully set forth herein.

30. This cause of action is pled in the alternative to the First Cause of Action.

31. The MSA contains a specific, post-termination covenant requiring Defendant to "deliver to the Company, within 10 days of the termination, all Work

Product, any work-in-progress . . . if such Work Product and materials have been paid for."

32. TGN has paid for the Work Product through at least the Beta milestone. Defendant's obligation to deliver this Work Product is clear and definite.

33. TGN has demanded that Defendant perform this obligation, and Defendant has refused.

34. TGN has no adequate remedy at law. The Work Product, which includes all source code, proprietary logic, and custom art assets for the Game, is unique. Monetary damages are insufficient to compensate TGN for the loss of this unique Work Product, which TGN owns as a "work for hire" and which represents many months of development, feedback, and investment. TGN cannot be made whole without the delivery of the specific Work Product it paid for.

35. TGN therefore requests, in the alternative to general damages, a judgment for specific performance compelling Defendant to immediately deliver to TGN all Work Product, in all formats, including but not limited to all source code, build files, documentation, and art and animation assets.

## THIRD CAUSE OF ACTION

### (Declaratory Relief - 28 U.S.C. §§ 2201, 2202)

### (Against All Defendants)

36. TGN re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 23, inclusive, as though fully set forth herein.

37. An actual and justiciable controversy has arisen and now exists between TGN and Defendant concerning their respective rights and obligations under the MSA.

38. TGN contends that (a) Defendant materially breached the MSA; (b) TGN's termination of the MSA was proper and effective; (c) all Work Product created by Defendant under the MSA is the sole and exclusive property of TGN as a "work for hire"; and (d) TGN is entitled to the immediate possession of all Work Product for which it has paid.

39. Plaintiff is informed and believes that Defendant disputes these contentions and wrongfully asserts a right to withhold the Work Product from TGN.

40. TGN desires a judicial determination and declaration of its rights and Defendant's obligations. A declaration from this Court is necessary and appropriate to resolve the parties' dispute regarding ownership and possession of the Work Product.

41. TGN therefore seeks a declaratory judgment from this Court that:

　　a. Defendant materially breached the MSA;

　　b. TGN's termination of the MSA was valid;

　　c. TGN is the sole and exclusive owner of all right, title, and interest in and to all Work Product created by Defendant pursuant to the MSA; and

　　d. TGN is entitled to immediate possession of all Work Product for which it has paid.

## FOURTH CAUSE OF ACTION

### (Conversion - In the Alternative to Breach of Contract)

42. TGN re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 23, inclusive, as though fully set forth herein.

43. This cause of action is pled in the alternative to the First Cause of Action.

44. At all relevant times, TGN was, and is, the owner and has a right to immediate possession of the Work Product, including all source code, assets, and documentation related to the "Cha Cha Bomb" game. TGN's ownership is established by the "work for hire" provision of the MSA and its payments to Defendant for the creation of said Work Product.

45. TGN made multiple written demands upon Defendant for the return of its property, the Work Product, including on July 15, July 24, and August 4, 2025.

46. Defendant has failed and refused, and continues to fail and refuse, to return the Work Product to TGN.

47. By wrongfully withholding and refusing to turn over the Work Product, Defendant has intentionally and substantially interfered with TGN's property rights.

48. As a direct and proximate result of Defendant's conversion, TGN has been damaged in an amount to be proven at trial.

49. Furthermore, because Defendant's conduct was willful, malicious, and oppressive, and in conscious disregard of TGN's property rights, TGN is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(i) As to the First Cause of Action for Breach of Contract, Plaintiff prays for general, special, and consequential damages in an amount according to proof at trial.

(ii) In the Alternative, as to the Second Cause of Action for Specific Performance, Plaintiff prays for an order of specific performance compelling Defendant, its officers, agents, and employees to immediately deliver to TGN all Work Product, in native and all other formats, including but not limited to all source code, build files, documentation, and art and animation assets related to the "Cha Cha Bomb" game.

(iii) As to the Third Cause of Action for Declaratory Relief, Plaintiff prays for a declaratory judgment that: (a) Defendant materially breached the MSA; (b) TGN's termination of the MSA was valid; (c) TGN is the sole and exclusive owner of all right, title, and interest in and to all Work Product created by Defendant pursuant to the MSA; and (d) TGN is entitled to immediate possession of all Work Product for which it has paid.

(iv) In the Alternative, as to the Fourth Cause of Action for Conversion, Plaintiff prays for: (a) damages according to proof at trial for the value of the converted property; (b) for an order compelling the return of the

Work Product; and (c) for punitive and exemplary damages in an amount sufficient to punish and deter Defendant's wrongful conduct.

(v) As to all Causes of Action, Plaintiff prays for: (a) pre-judgment and post-judgment interest at the maximum legal rate; (b) for costs of suit incurred herein; and (c) for such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: December 8, 2025    _____
                            Damian D. Capozzola

The Law Offices of Damian D. Capozzola
Attorney for Plaintiff TOP GAMING NETWORK LTD.